## Harmony Township Volunteer Firemen, Inc., License

*Harold L. Roth*, for appellant.

*A. G. Uncapher*, for Pennsylvania Liquor Control Board.

McCREARY, P. J., March 29, 1948.—We have before us for consideration three appeals from three orders of the Pennsylvania Liquor Control Board refusing to approve applications for license under the provisions of the Liquor Control Act. In addition to the above-captioned appeal, the court heard arguments on the same day on the appeal of Stone Quarry Club of 2572 Beaver Avenue, Monaca, Pa., at no. 6 March term, 1948, and Midland American Croatian Club, at no. 19, March term, 1948. Appellants are corporations of the first class, duly incorporated under the laws of the Commonwealth of Pennsylvania, and chartered by the Court of Common Pleas of Beaver County, said charters being recorded in the office of the Recorder of Deeds of Beaver County.

Appellants filed with the Pennsylvania Liquor Control Board applications for club liquor licenses for their club premises, located in Beaver County, Pa. Hearings were held before an examiner of the Pennsylvania Liquor Control Board on the applications for club liquor licenses, and the Pennsylvania Liquor Control Board, by opinions and orders, refused the applications for club liquor licenses, for the reason that "The quota

for the County of Beaver is exceeded. Therefore, the board is prohibited by Act No. 358 of 1939 from issuing any new licenses, except hotels, for this county".

From the decisions of the Pennsylvania Liquor Control Board, refusing the application for club liquor licenses, these appeals are taken.

At the request of the Pennsylvania Liquor Control Board arguments were heard before the court en banc, the request for such procedure having been made for the reason that since the last decree of this court on the question of interpretation of the Liquor License Quota Act of June 24, 1939, P. L. 806, sec. 2, 47 PS §744-1002, Senate Bill No. 814 was passed by the Senate and the House of Representatives, thereby throwing additional light on the intention of the legislature in adopting the Quota Act.

Inasmuch as the three appeals were argued together and involve the same question, we will dispose of them in this one opinion, but will make separate orders for each.

The facts are not in dispute. At the hearing at the above stated number and term it was stipulated by A. G. Uncapher, Deputy Attorney General, on behalf of the Pennsylvania Liquor Control Board, and by Harold L. Roth, Esq., for appellant, as follows:

"It is stipulated and agreed between counsel for the Pennsylvania Liquor Conrol Board and counsel for applicant that according to the 1940 census the population of Harmony Township is 2,317, which permits, under judicial interpretation of the Quota Act, the issuance of three retail licenses; and that there are in effect at the present time three such licenses, excluding clubs.

•    •    •    •    •    •    •    •    •    •

"It is further agreed by counsel for the board that the only reason for refusing to grant this license is that the quota of this particular municipality is exceeded; and that the only question to be determined

by this court is whether or not this club comes within the interpretation of the Quota Act.

"The Court: Mr. Roth, do you agree to that stipulation?

"Mr. Roth: We are satisfied, your honor."

A similar stipulation was made by counsel in the other two appeals.

Commencing with the year 1941, our Beaver County Quarter Sessions Court, as then constituted, has ruled that the Quota Law was not designed to include clubs as retail dispensers within its provisions and that therefore a license could be granted to a bona fide club without violating the restrictions imposed by the Quota Law. The conclusion that the Quota Law was badly drawn and ambiguous is attested by the fact that when the Col. Joseph H. Thompson Post No. 261, Appeal (8 Beaver 161) and Petition of South Heights Volunteer Fire Department, Appeal (8 Beaver 250), were before us for consideration, there were 28 counties in the State of Pennsylvania, including Beaver County, which had decided that clubs do not come under the provisions of the Quota Law, and 22 counties in the State had decided otherwise. All of the courts indicated in their opinions that it was imperative that the legislature do something to remedy the situation so that the law would be capable of only one interpretation. This court as now constituted felt obliged, in the interest of certainty as to the application of the Quota Law, to follow the conclusions of our illustrious predecessors on the Beaver County bench, namely Judges Reader and Wilson, and to date we have done so consistently.

Since the passage of Senate Bill No. 814 by the 1947 legislature, we now conclude, however, that the Quota Act has had sufficient additional light thrown on its meaning that there is no longer any room for doubt on the subject.

The Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002, is titled as follows:

"An act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities."

Section 1 of this act defines hotels. Section 2 of the act provides as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of license granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

Compare this section of the original Quota Act with Senate Bill No. 814, as adopted by the 1947 General Assembly, the title and body of which read as follows:

## "An Act

To amend section two of the act approved the twenty-fourth day of June one thousand nine hundred thirty-nine (Pamphlet Laws 806) entitled 'An act limiting

the number of licenses for the retail sale of liquor malt or brewed beverages or malt and brewed beverages to be issued by the Pennsylvania Liquor Control Board defining hotels and prescribing the accommodations required of hotels in certain municipalities' by removing certain restrictions for a limited period of time as to the licensing of veterans' organizations.

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows

"Section 1. Section two of the act approved the twenty-fourth day of June one thousand nine hundred thirty-nine (Pamphlet Laws 806) entitled 'An act limiting the number of licenses for the retail sale of liquor malt or brewed beverages or malt and brewed beverages to be issued by the Pennsylvania Liquor Control Board defining hotels and prescribing the accommodations required of hotels in certain municipalities is hereby amended to read as follows

"Section 2. No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages or the retail sale of liquor and malt or brewed beverages in excess of one of such licenses of any class for each one thousand inhabitants or fraction thereof in any municipality exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed but where such number exceeds the limitation prescribed by this act, no new license except for hotels as defined in this act *and veterans' clubs as hereinafter provided* shall be granted so long as said limitation is

exceeded. *Any branch post camp or chapter of a veterans' organization or any subsidiary thereof whose active and voting membership is the same as such branch post camp or chapter which files a proper application together with the required fees and bond within eighteen months after the effective date of this act may be licensed any time after its incorporation whether or not it shall have been in existence and operation for a period of one year.*

"Section 2. All acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

(Italics indicate the provisions added by the amendment.)

Why, we ask, was it necessary for the legislature to add after the words "except for hotels as defined in this act" the words "and veterans' clubs as hereinafter provided", if all clubs were to be excluded from the restrictive provisions of the Quota Law. These words would be absolutely unnecessary and meaningless if it were the intention of the legislature that licenses may be issued to all clubs, otherwise qualified. We cannot, in good faith, attach any meaning to the action of the legislature in adding the words 'and veterans' clubs as hereinafter provided, than that body interpreted the original Quota Act, to which Senate Bill No. 814 was intended to be an amendment, as meaning that clubs are intended to be included in the quota.

But, argues appellant, Senate Bill No. 814 was vetoed by the Governor and hence never became a law. We agree that that is a fact, but this does not deprive the abortive attempt at amendment of its value as a vehicle for delivering the intention or interpretation of the legislature on the serious questions involved. Sutherland, in his three-volume work on Statutory Construction, 3rd ed., vol. 2, §5203, in discussing the availability of statutes in pari materia, takes up the subject of "unconstitutional, vetoed, repealed and expired stat-

utes" and from the reported cases throughout the United States, concludes:

"An act relating to the same subject matter need not be a valid and existing statute to be construed with an ambiguous act in order to determine its meaning. Unconstitutional statutes relating to the same subject matter should be considered in order to determine the legislative intent in enacting a statute. Legislative intention must not be confused with the power of the legislature to carry that intention into effect. On the same basis some courts have referred to vetoed bills relating to the same subject matter in construing an ambiguous act. . . ."

No Pennsylvania case is cited as authority for his general proposition, but we agree that it is good law in Pennsylvania. Counsel for appellee cites the case of Russ v. Commonwealth, 210 Pa. 544, as being in accord. We do not agree that that case is in point, because there the act of assembly was passed over the Governor's veto and hence became a law duly enacted. However, the language of Mr. Justice Brown, in delivering the opinion of the Supreme Court, is significant. He said in part as follows (pp. 552, 553) :

"The failure of the learned court below to so interpret it must be regarded as error. We consider this clear, with nothing before us except the resolution itself; but subsequent legislation, while not purporting to be expository of it, unmistakably indicates the legislative understanding of what was intended by it. By an act passed at the same session, though vetoed by the governor because regarded as an improper expenditure of the public funds, an appropriation was made for the payment of the expenses incurred by the legislature 'in attending the ceremonies connected with the unveiling of the monument at the tomb of General U. S. Grant'."

". . . The resolution and acts of 1897 and 1903 related to the same subject-matter, and are to be con-

sidered together in determining the legislative intention. 'The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts in pari materia are to be taken together, as if they were one law: Doug. 30; 2 Term Rep. 387, 586; 4 Maule & Selw. 210. If a thing contained in a subsequent statute, be within the reason of the former statute, it shall be taken to be within the meaning of that statute: Lord Raym. 1028; and if it can be gathered from a subsequent statute in pari materia, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute: Morris v. Mellin, 6 Barn. & Cress. 454; 7 Barn. & Cress. 99. Wherever any words of a statute are doubtful or obscure, the intention of the legislature is to be resorted to, in order to find the meaning of the words: Wimbish v. Tailbois, Plowd. 57. A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter: Stowell v. Zouch, Plowd. 356. The citations are but different illustrations of the rule, that the meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose which was designed—the limitation of the rule being, that to extend the meaning to any case not included in the words, the case must be shown to come within the same reason upon which the lawmaker proceeded, and not only within a like reason: United States v. Freeman, 3 Howard 556."

We are satisfied that when an act of assembly, such as the 1939 Quota Law, is ambiguous in its meaning, under general rules of construction, the court has a right to refer to vetoed bills relating to the same subject matter for any light they may shed in interpreting

the ambiguous act. Appellants contend that we are inconsistent when we utilize the abortive attempt of the 1947 legislature to enact Senate Bill No. 814 as an aid in interpreting the true intention of the 1939 legislature in passing the Quota Act, and refuse to give the same significance to the action of the 1941 legislature in passing an act expressly excluding clubs from the operation of the Quota Law. They point to the fact that this 1941 act, too, was vetoed by Governor James and hence never became a law. This court, as now constituted, never had an opportunity to originally pass on the question of the effect of the vetoed Act of 1941. It was considered by one of our predecessors, Hon. Henry H. Wilson, and passed by as having no significance. We accepted his conclusion as establishing the law for Beaver County in the interest of certainty and uniformity without reconsidering his reasoning for his conclusion. We are not so bound by precedent in our consideration of the vetoed Act of 1947.

Four counties of Western Pennsylvania, which formerly decided that clubs did not come within the provisions of the Quota Law, have reversed their positions since the passage of Senate Bill No. 814 and its veto by Governor Duff. They are Erie, Allegheny, Cambria and Fayette. See Canteen Athletic Club's Appeal, 60 D. & C. 631; In re Quota Act of the Pennsylvania Legislature (County Court of Allegheny County, No. C 2558-1947).

Entertaining these views, as we do, we now have no doubt about the meaning of the Quota Law, and conclude that (1) clubs now licensed are not to be considered in determining whether the quota for retail licenses is exceeded, but (2) no new licenses can be granted to clubs or other retailers, except hotels, as long as the limitation fixed by the Quota Law is exceeded, as determined by the last decennial census.

334

Hence the appeal must be dismissed, and we make the following

*Order*

Per Curiam:

Now, to wit, March 29, 1948, the above-entitled matter having come on for hearing, on appeal, on consideration of the facts, as stipulated, and the law, as argued by counsel, the appeal of Harmony Township Volunteer Firemen, Inc., from the action of the Pennsylvania Liquor Control Board in refusing to approve their application for license, is dismissed.